UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
INDIAN HARBOR INSURANCE　　　　　　 :
COMPANY, as subrogee of
GEORGE LAX, d/b/a VP 57, LLC,　　　　　 :

                     Plaintiff,　　　　　　 :

        - against -　　　　　　　　　　　　　　 :

DORIT BAXTER SKIN CARE, INC.　　　　　 :

                    Defendant.　　　　　 :
------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/5/06

**OPINION AND ORDER**

04 Civ. 9746 (PKL)

**APPEARANCES**

GENNET, KALLMANN, ANTIN & ROBINSON, P.C.
45 Broadway Atrium
c/o Litman Suite
New York, New York 10006
Mark L. Antin, Esq.

Attorneys for Plaintiff

SEDGWICK, DETERT, MORAN & ARNOLD, LLP
125 Broad Street
39th Floor
New York, New York 10004
Michael Frank Bastone, Esq.
Scott Lawrence Haworth, Esq.

Attorneys for Defendant

## LEISURE, District Judge:

Plaintiff Indian Harbor Insurance Company, as subrogee of George Lax, d/b/a VP 57, LLC, brings this subrogation action against defendant Dorit Baxter Skin Care, Inc, a commercial tenant in a building owned by plaintiff. Plaintiff seeks to recoup insurance proceeds paid to Mr. Lax for property damage that the latter allegedly incurred after a fire was started on the floor occupied by defendant. Plaintiff specifically alleges that, due to defendant's negligence, gross negligence, and breach of the parties' lease, defendant caused the fire. Defendant moves for summary judgment, arguing that the waiver-of-subrogation clause in the parties' lease forecloses this action. For the reasons set forth below, defendant's motion is GRANTED.

## BACKGROUND

### I. Factual History

The facts of this case are straightforward.[1] George Lax, d/b/a VP 57, LLC owned and managed a commercial property located at 45 West 57th Street, New York, New York at the time of the events giving rise to this litigation. (Def.'s 56.1 ¶ 3; Am. Compl. ¶ 7.) Mr. Lax rented a one-floor unit of his building to defendant Dorit Baxter Skin Care, Inc. pursuant to a lease dated June 21, 1993 and a lease extension agreement dated December 10, 2002 (together, the "Lease"). (Def.'s 56.1 ¶ 5; Murray Aff. Exs. E-F.) Defendant operated a hairstyling salon and skin-care spa in the rented premises. (Def.'s 56.1 ¶ 5; Am. Compl. ¶ 8.)

---

[1] The Court notes that defendant has filed, in accordance with Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 56.1 Statement"), an unorthodox separate statement of numbered material facts as to which it contends there are no genuine issues to be tried. S.D. & E.D. N.Y. R. 56.1(a). The numbered provisions in the Rule 56.1 Statement do not spell out the exact material facts which it believes are uncontested. Instead, they reference the various documents—such as the amended complaint and insurance policies—housing those facts, with a citation to the location of the documents in the record. The Court finds that, because plaintiff has not objected to this approach and instead has filed an adequately responsive statement in which it admits all of defendant's asserted material facts, and because the documents containing the asserted facts are relatively straightforward, Local Rule 56.1's requirements have been met. Oddly, plaintiff has also submitted a "Counter-statement" that sets forth what it believes are uncontested material facts. Because Local Rule 56.1 does not call for such a submission, it will be ignored.

A.     The Fire

Plaintiff alleges that on January 25, 2004, while the Lease was still in effect, a fire occurred within the premises operated by defendant. (Def.'s 56.1 ¶ 3; Am. Compl. ¶ 11.) More specifically, plaintiff alleges that the fire started near a Maytag dryer that defendant used to dry sheets, towels, robes, and other fabrics. (Def.'s 56.1 ¶ 3; Am. Compl. ¶ 11.) Plaintiff claims that the fire was caused by the spontaneous ignition of certain vegetable oil-laden cotton fabrics that had been put in the dryer for drying. (Def.'s 56.1 ¶ 3; Am. Compl. ¶ 12.) Plaintiff claims that (1) the Maytag dryer used by defendant had a visible written statement warning of the potential of fire if materials containing, *inter alia*, flammable liquids such as vegetable oil were dried in the dryer; and (2) the dryer's user guide warned of the risk of fire if items spotted or soaked with vegetable oil were dried in the dryer. (Def.'s 56.1 ¶ 3; Am. Compl. ¶ 14.) Additionally, plaintiff claims that it is "well known" in the skin care industry that fabrics containing or saturated with vegetable oils, even after having been washed, should not be dried in a dryer because they are prone to cause fire. (Def.'s 56.1 ¶ 3; Am. Compl. ¶ 13.) Plaintiff further argues that a fire sprinkling system located in the ceiling of the room in which the dryer was kept was unable to quell the fire because defendant, in contravention of the terms of the Lease (Def.'s 56.1 ¶ 3; Am. Compl. ¶ 9), had previously installed a soffit or partial partition which blocked the sprinkler, preventing its stream of water from reaching the fire (Def.'s 56.1 ¶ 3; Am. Compl. ¶ 17).

After the fire, plaintiff, Mr. Lax's insurer, compensated Mr. Lax, pursuant to their commercial property insurance agreement, in the amount of $594,609.20 for the losses incurred from the fire. (Def.'s 56.1 ¶ 8; Am. Compl. ¶ 18; Murray Aff. Ex. G.)

B.   The Operative Agreements

The Lease contains a waiver-of-subrogation clause which reads as follows:

> Landlord and Tenant, respectively, hereby waive the right to recover from each other any damage or loss occasioned by hazards compensated by insurance (excluding liability insurance), regardless of whether said damage or loss resulted from the negligence of either party, their officers, employees, agents or otherwise and said parties do hereby waive the right to subrogate any insurance carrier or other party to their respective rights of recovery against each other in any event.[2]

(Def.'s 56.1 ¶ 6; Murray Aff. Ex. E.) Both Mr. Lax's insurance agreement with plaintiff,[3] and defendant's insurance agreement with its insurer, Granite State Insurance Company,[4] contain

---

[2] While the parties do not identify this issue, the Lease actually contains two waiver-of-subrogation clauses: the first is located in Article 9 (entitled "Destruction, Fire and Other Casualty"); the second, which is set forth above in the text, is located in Article 46. Articles 1 through 38a of the Lease are drawn from the standard form loft lease issued by The Real Estate Board of New York, Inc; articles 39 through 81 are annexed to the main body of the lease in the form of a "Rider." Because the main body of the lease contains language incorporating the provisions of the Rider by reference, a perfectly acceptable means of organizing the Lease, see Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282 F.3d 92, 97 (2d Cir. 2002) ("Applying New York law, we have found that '[p]arties to a contract are plainly free to incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other agreements.'" (quoting Ronan Assocs., Inc. v. Local 94-94A-94B, Int'l Union of Operating Eng'rs, 24 F.3d 447, 449 (2d Cir. 1994))); Lowry & Co. v. S.S. Le Moyne D'iberville, 253 F. Supp. 396, 398 (S.D.N.Y. 1966) (Weinfeld, J.) ("[I]t is settled doctrine that a reference in a contract to another writing, sufficiently described, incorporates that writing."); see also Restatement (Second) of Property: Landlord & Tenant § 13.1(i) (1977) ("A promise contained in a separate instrument is contained in the lease if the separate document is incorporated by reference in the lease, or if it is an amendment to the lease."), the Court finds that the Rider's terms are in full force and effect. The question of how the two waiver-of-subrogation clauses, which include different terms, should be interpreted is resolved by Article 64 of the Lease, which states that, in the event of any inconsistency or ambiguity between the terms of any provision in the main body of the Lease, and the terms of any provision in the Rider, the latter's terms shall prevail. Consequently, because there is an inconsistency between these two provisions, the provision in the Rider—Article 46—will prevail.

[3] The provision, entitled "Transfer of Rights of Recovery Against Others to Us," reads as follows:

> If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:
> 1. Prior to a loss to your Covered Property or Covered Income.
> 2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:
>    a. Someone insured by this insurance;
>    b. A business firm:
>       (1) Owned or controlled by you; or
>       (2) That owns or controls you; or
>    c. Your tenant.
> This will not restrict your insurance.

(Def.'s 56.1 ¶ 9; Murray Aff. Ex. G at § I of Commercial Property Conditions.)

[4] The relevant part of the provision pertaining to property coverage, entitled "Transfer of Rights of Recovery Against Others to Us," reads as follows:

3

provisions allowing the respective insured to waive in writing the rights of subrogation it would have against another party. (Murray Aff. Ex. G at § I of Commercial Property Conditions; Murray Aff. Ex. H at § K of Common Policy Conditions.)

II. Procedural History

Plaintiff brought this action on December 10, 2004, asserting causes of action for breach of contract, negligence, and gross negligence. (Def.'s 56.1 ¶ 1; Compl. ¶¶ 19-30.) Defendant answered on February 17, 2005. Plaintiff then filed an amended complaint on May 5, 2005, which included an additional count alleging breach of contract on the ground that defendant breached the Lease "by dangerously altering the premises without notice and approval by plaintiff"[5] (Def.'s 56.1 ¶ 3; Am. Compl. ¶ 28), and a prayer for greater damages (Def.'s 56.1 ¶ 3; Am. Compl. ¶ 18). Defendant filed its amended answer on July 7, 2005, asserting, *inter alia*, an affirmative defense that the waiver-of-subrogation clause in the Lease bars this action. Defendant filed its motion for summary judgment on August 2, 2005, and the motion was fully briefed by September 22, 2005.

---

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:
a. Prior to a loss to your Covered Property.
b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:
   (1) Someone insured by this insurance;
   (2) A business firm:
      (a) Owned or controlled by you; or
      (b) That owns or controls you; or
      (c) Your tenant.
You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers. This will not restrict your insurance.
(Def.'s 56.1 ¶ 10; Murray Aff. Ex. H at § K of Commercial Property Conditions.)
[5] This count is additional to a claim that defendant breached the parties' Lease "by its negligent and grossly negligent conduct with respect to the cleaning and drying of vegetable oil soaked fabrics and with respect to its failure to maintain in good operating condition the fire detection and protection systems in the premises." (Am. Compl. ¶ 26.)

4

# DISCUSSION

As a threshold matter, the Court finds that its subject matter jurisdiction has been properly invoked, as plaintiff is a Connecticut corporation with a principal place of business in Connecticut (Def.'s 56.1 ¶ 3; Am. Compl. ¶ 1), defendant is a New York corporation (Def.'s 56.1 ¶¶ 3-4; Am. Compl. ¶ 4; Am. Answer ¶ 1), and the damages alleged exceed $75,000 (Am. Compl. ¶ 5). See U.S. Const. art. III, §2; 28 U.S.C. § 1332(a)(1), (c)(1) (2000); Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003).

## I.    Summary Judgment Standards

Summary judgment is a tool used by district courts "to pierce the pleadings to flush out those cases that are predestined to result in a directed verdict." Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997); accord United Nat'l Ins. Co. v. Tunnel, Inc., 988 F.2d 351, 355 (2d Cir. 1993) ("Summary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict."). To that end, district courts are directed to issue summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Where, as here, the party moving for summary judgment is the party against whom a claim has been asserted, it may move for summary judgment at any time. Fed. R. Civ. P. 56(e).

A court may grant summary judgment "'only if it can be established that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Opals on Ice Lingerie v. Body Lines Inc., 320 F.3d 362, 367-68 (2d Cir. 2003) (quoting Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 423 (2d Cir.

5

2002)). Of course, "'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Id. at 368 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986)); accord N.Y. Stock Exchange, Inc. v. New York, N.Y. Hotel LLC, 293 F.3d 550, 554 (2d Cir. 2002) ("A dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" (quoting Anderson, 477 U.S. at 248)). The relevant substantive law will demonstrate whether a fact is material for the purposes of summary judgment. Anderson, 477 U.S. at 248. ("As to materiality, the substantive law will identify which facts are material.").

When considering a summary judgment motion, a district court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975) (Kaufman, C.J.) (citing Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); accord LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995) ("'The inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994))); Patrick v. LeFevre, 745 F.2d 153, 158 (2d Cir. 1984) (Kaufman, J.). If there exists "*any* evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996) (emphasis added).

6

Finally, where the issue on summary judgment concerns the interpretation of a contract, a court shall determine, as a matter of law, whether the contract is clear on its face, or whether its terms are so ambiguous as to require additional proof demonstrating the subjective intent of the parties when they entered into the contract. Tokio Marine & Fire Ins. Co., Ltd. v. McDonnell Douglas Corp., 617 F.2d 936, 940 (2d Cir. 1980); see also Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) ("When the question is a contract's proper construction, summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity."). In the latter instance,

> [w]here the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become an issue of fact and summary judgment is inappropriate, since it is only when there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law.

Seiden, 959 F.2d at 428 (citations omitted); accord Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975) (Kaufman, C.J.) ("Where contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment would be improper."); Painton & Co. v. Bourns, Inc., 442 F.2d 216, 233 (2d Cir. 1971) (Friendly, J.) ("When a contract is so ambiguous as to require resort to other evidence to ascertain its meaning and that evidence is in conflict, the grant of summary judgment is improper.").

II. The Waiver-of-Subrogation Clause[6]

　　A. The Waiver-of-Subrogation Clause Extends to Claims Arising out of Another's Gross Negligence

Subrogation is an "'equitable doctrine [that] allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse.'" St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 84 (2d Cir. 2005) (Kearse, J.) (quoting Kaf-Kaf, Inc. v. Rodless Decorations, Inc., 687 N.E.2d 1330, 1332 (N.Y. 1997) (Kaye, C.J.)); accord Loctite VSI Inc. v. Chemfab N.Y. Inc., 701 N.Y.S.2d 723, 724 (App. Div. 2000) ("Subrogation, an equitable doctrine, allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse."). Contracting parties may freely waive their respective insurers' rights of subrogation. Id. Parties often choose to include such a waiver in a contract because they prefer to look to their respective insurers for the recovery of certain losses, and release any right of recovery either party—or its subrogated insurer—might have against the other party. Kaf-Kaf, Inc., 687 N.E.2d at 1333; Gap, Inc. v. Red Apple Cos., 725 N.Y.S.2d 312, 316 (App. Div. 2001) ("[P]arties to a commercial transaction are free to allocate the risk of liability to third parties through insurance and deployment of a waiver of subrogation clause."); Ins. Co. of N. Am. v. Borsdorff Servs., Inc., 639 N.Y.S.2d 816, 816 (App. Div. 1996) (stating that a waiver-of-subrogation provision in a lease "is valid and enforceable[] as an allocation of risk provision"). The parties, "'in effect, [are] simply requir[ing] one of the parties to the contract to provide insurance for all of the parties.'" St. Paul, 409 F.3d at 84 (quoting Board of Educ. v. Valden Assocs., Inc., 389 N.E.2d 798, 799 (N.Y. 1979) (per curiam)); see also Tokio Marine & Fire Ins. Co. v. Employers Ins. of

---

[6] Article 65 of the Lease provides for New York law to govern the Lease.

8

the freedom to insure itself against its own gross negligence.[7] Id. Most importantly, the contracting party is not *exempting* itself from liability; it is merely shifting the source of payment to the injured party. Id.; see also Indus. Risk Insurers v. Port Authority of N.Y. & N.J., 387 F. Supp. 2d 299, 312 (S.D.N.Y. 2005) ("[T]he focus of New York public policy with respect to gross negligence claims lies with ensuring that there not be an impediment against the right of a plaintiff to recover, *not* with ensuring that the defendant will not be able to obtain insurance against the risk of his tortious conduct and its impact on others."). The most important objective—compensation of the injured party—is met in either case. Id.

In the instant case, defendant argues that plaintiff's negligence and gross negligence claims are foreclosed because the waiver-of-subrogation clause in the Lease waives either party's subrogee's right to recover from the other "any damage or loss" compensable by insurance, and the St. Paul decision's dictate that waiver-of-subrogation clauses are enforceable against claims of gross negligence. Plaintiff's primary counter-argument is that the waiver-of-subrogation clause, on its face, does not evince an intent on the part of the parties to extend the waiver of subrogation to claims arising out of either party's gross negligence. (Pl.'s Mem. Law Opp'n Mot. 8.) While plaintiff's argument is not entirely clear, it is ostensibly attempting to argue that the clause's waiver as to "*any* damage or loss occasioned by hazards compensated by insurance" does not extend to damages arising from a party's gross negligence because the clause states that the waiver applies "regardless of whether said damage or loss resulted from the negligence of either party" without also enumerating its application to damages arising out of the other's gross negligence. Plaintiff's argument contravenes the plain meaning of the provision.

---

[7] Such provisions are only disallowed where they seek to indemnify a party for damages arising from an intentional injury. St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, Inc., 409 F.3d 73, 86 (2d Cir. 2005) (Kearse, J.).

Wausau, 786 F.2d 101, 104 (2d Cir. 1986) ("A waiver of subrogation is useful in such projects because it avoids disruption and disputes among the parties to the project. It thus eliminates the need for lawsuits, and yet protects the contracting parties from loss by bringing all property damage under the all risks builder's property insurance."). This is wholly permissible. However, a waiver-of-subrogation clause will not be enforced "'beyond the scope of the specific context in which it appears.'" St. Paul, 409 F.3d at 84 (quoting Kaf-Kaf, Inc., 687 N.E.2d at 1330).

While traditionally it has been unquestioned that under New York law a waiver-of-subrogation clause is enforceable against claims for losses resulting from another contracting party's negligence, the Second Circuit recently held that a waiver-of-subrogation clause is also enforceable against claims for losses resulting from another's gross negligence. Id. at 85-87. In that case, see St. Paul, 409 F.3d at 85-87, the Second Circuit rejected the argument that a waiver-of-subrogation clause could not be enforced against claims for damages resulting from another party's gross negligence because of New York state's unquestioned interest in preventing a party from evading liability for its grossly negligent conduct by way of a contractual provision. The Court distinguished between, on the one hand, exculpatory clauses that seek to insulate a contracting party from recovering damages stemming from the other contracting party's grossly negligent conduct, id. at 85, and, on the other hand, indemnification-type provisions "'that simply shift the source of compensation without restricting the injured party's ability to recover,'" id. at 86 (quoting Austro v. Niagara Mohawk Power Corp., 487 N.E.2d 267, 267 (N.Y. 1985)). The latter type of provision is permissible because a contracting party maintains

9

Courts applying New York law must discern the meaning of the terms of a lease by looking to the plain meaning of its terms. See, e.g., Broad Props., Inc. v. Wheels, Inc., 351 N.Y.S.2d 15, 19 (App. Div. 1974) (holding that, in determining the meaning of a clause in a lease, "there is no better evidence of the 'parties' intention than their practical construction of an agreement'" (quoting Refrigeration for Science, Inc. v. Deacon Realty Corp., 334 N.Y.S.2d 418, 428 (Sup. Ct. 1972), aff'd, 344 N.Y.S.2d 1018 (App. Div. 1973))); Anzolone v. Paskusz, 89 N.Y.S. 203, 206 (App. Div. 1904) ("In this case the parties to the original leases plainly indicated what they meant by the word 're-enter,' and, with that expression of their intention, the technical common-law meaning of the word as used in ancient instruments is displaced.").

The provision waives the right of either party to subrogate its insurer to its rights to recover for "*any* damage or loss occasioned by hazards compensated by insurance." Preceding "damage or loss" with the word "any," which means "one selected *without restriction*," Webster's Ninth New Collegiate Dictionary 93 (9th ed. 1985) (emphasis added), demonstrates an intent to have the provision encompass all claims *of any kind*, provided it is compensable by insurance. The Court believes that the subsequent verbiage stating that the waiver shall apply "regardless of whether said damage or loss resulted from the negligence of either party" does not purport to limit the application of the provision *solely* to claims of negligence, but instead provides an example of the clause's application in the instance of claims arising out of negligence. Here the parties are making clear that their negligence does not bar application of the provision. To argue that additional language, which enunciates the applicability of the clause to negligence claims, means—or even implies—that it is inapplicable to breach of contract or gross negligence claims would require reading into the Lease terms the parties did not include themselves. The class of claims for which the parties' rights of subrogation are waived is clear:

11

The claim need only arise from a hazard compensated by insurance. See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) ("In interpreting a contract under New York law, 'words and phrases . . . should be given their plain meaning,' and the contract 'should be construed so as to give full meaning and effect to all of its provisions.'" (quoting Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir. 2003))).

B. The Waiver-of-Subrogation Clause Is Enforceable Notwithstanding Defendant's Purported Prior Breach of the Lease

Plaintiff's second argument also fails. Plaintiff argues that defendant should be foreclosed from enforcing the waiver-of-subrogation clause because defendant previously breached the lease by first installing the dryer and then installing the soffit that blocked the sprinkler without first obtaining Mr. Lax's prior permission pursuant to the terms of the Lease.[8] (Pl.'s Mem. Law Opp'n Mot. 7.) Plaintiff claims that "[i]t is both contrary to law and equity for a contracting party to rely upon the terms of a contract which it breached." (Pl.'s Mem. Law Opp'n Mot. 5.) The Court will not discuss the merits of this argument because the relevant question is whether defendant can enforce a particular term in a *lease*—a particular form of a contract—if defendant previously breached another term of the lease.

While leases were traditionally viewed as conveyances of real property at common law, see generally 15 Richard A. Lord, Williston on Contracts § 44:41, at 174 (4th ed. 2000) ("Under the traditional view, an ordinary lease is viewed through the perspective of property law . . . ."),

---

[8] Both the main body of the Lease and its Rider contain provisions that speak to defendant's rights to make alterations to the premises. Because the terms of the Rider prevail over any inconsistent terms in the main body of the lease (Lease art. 64), Article 70, entitled "Tenant's Work," would normally control over conflicting provisions in the Lease's main body. Article 70, however, specifically states that any alterations made by tenant "shall comply with all applicable provisions of this Lease," which the section states specifically includes Article 3. (Lease art. 70.) Article 3 of the Lease states that "[t]enant shall make no changes in or to the demised premises of any nature without Landlord's prior written consent." (Lease art. 3.) Consequently, the Lease requires defendant to obtain Mr. Lax's prior written consent for making any changes. Plaintiff alleges that no such written permission was sought, and defendant does not contest this point.

the modern trend, as adopted by the New York Court of Appeals, recognizes the dual nature of a lease—that is, as part real property conveyance and part bilateral contract: "'[A] lease, especially a modern lease, is generally more than a simple conveyance of an interest in land for a fixed period of time. Typically it is also a contract which requires the parties, particularly the tenant, to fulfill certain obligations while the lease is in effect.'" 219 Broadway Corp. v. Alexander's, Inc., 387 N.E.2d 1205, 1206 (N.Y. 1979) (quoting Geraci v. Jenrette, 363 N.E.2d 559, 563 (N.Y. 1977)); id. ("[A] lease achieves two ends, to wit: the conveyance of an estate in real property from lessor to lessee, and the delineation of the parties' rights and obligations pursuant thereto."); accord In re Tri-Glied, Ltd., 179 B.R. 1014, 1023 (Bankr. E.D.N.Y. 1995) ("Today a lease is more than a mere conveyance; it is also a bilateral contract."). Consequently, under this view, "those features of the lease which are strictly contractual in their nature should be construed according to the rules for the interpretation of contracts generally and in conformity with the fundamental principle that the intentions of the parties should be given effect as far as possible." Lord, supra, § 44:42, at 188.

Because plaintiff argues that defendant's enforcement of the waiver-of-subrogation clause is barred by defendant's purported prior breach of the Lease, the Court turns to the question whether the parties' promises are independent of, or dependent on, each other; if the latter, one party's performance of a particular promise is a condition precedent to the other party's performance. Broad Props., Inc. v. Wheels, Inc., 351 N.Y.S.2d 15, 19 (App. Div. 1974), aff'd, 321 N.E.2d 781 (N.Y. 1974).[9] Applying contract interpretation principles to a commercial

---

[9] In Jacob & Youngs v. Kent, Judge Cardozo articulated this principle as follows:
> Some promises are so plainly independent that they can never by fair construction be conditions of one another. Others are so plainly dependent that they must always be conditions. Others, though dependent and thus conditions when there is departure in point of substance, will be viewed as independent and collateral when the departure is insignificant.

129 N.E. 889, 890 (N.Y. 1921) (Cardozo, J.) (citing Rosenthal Paper Co. v. Nat'l Folding Box & Paper Co., 123 N.E. 766 (N.Y. 1919); Bogardus v. N.Y. Life Ins. Co., 4 N.E. 522 (N.Y. 1886)).

13

lease, the New York Court of Appeals has held that the question whether covenants made by a lessor and lessee in their lease are dependent or independent of each other "is a question to be determined 'by the intention and meaning of the parties, as expressed by them, and by the application of common sense to each case submitted for adjudication.'" Greasy Spoon Inc. v. Jefferson Towers, Inc., 551 N.E.2d 585, 587 (N.Y. 1990) (quoting Rosenthal Paper Co. v. Nat'l Folding Box & Paper Co., 123 N.E. 766, 768 (N.Y. 1919)); accord 56-70 58th St. Holding Corp. v. Fedders-Quigan Corp., 159 N.E.2d 150, 154 (N.Y. 1959) (same); Broad Props., Inc., 351 N.Y.S.2d at 19 (same).[10] Where the covenants in question are found to be dependent, "the performance of one party's covenant is a condition precedent to the right of that party to recover for a breach of the covenant by the other party," Broad Props., Inc., 351 N.Y.S.2d at 19; accord F.H.R. Auto Sales, Inc. v. Scutti, 534 N.Y.S.2d 266, 267 (App. Div. 1988) ("Whether the covenant to repair was a condition precedent rests upon whether the provisions concerning repair and consent were dependent covenants."). Where the covenants are independent, one party's performance of its obligations under the lease is not conditioned or dependent upon the other party's compliance with the other provisions of the lease. See, e.g., Greasy Spoon Inc., 551 N.E.2d at 587 ("Nor did either of the two stipulations on which defendant relied alter the basic relationship among the various lease covenants or otherwise render defendant's obligations with respect to plaintiff's planned sidewalk café dependent upon plaintiff's compliance with other lease clauses.").

---

[10] See also Envtl. Indus. Servs. Corp. v. Souders, 304 F. Supp. 2d 599, 602 (D. Del. 2004) (following Greasy Spoon Inc. in an action governed by New York law); Hartford Steam Boiler Inspection & Ins. Co. v. Woodstock '99 LLC, 775 N.Y.S.2d 639, 640 (App. Div. 2004) ("Contrary to plaintiffs' contention, defendant's compliance with contracts between defendant and other parties was not a condition precedent to defendant's performance under the Agreement in the absence of 'clear language' to that effect."). See generally 15 Richard A. Lord, Williston on Contracts § 44:42, at 188-89 (4th ed. 2000) (citing, inter alia, Greasy Spoon Inc. in support of proposition that "covenants and stipulations on the part of the lessor and lessee are to be construed to be dependent upon each other or independent of each other, according to the intention of the parties and the good sense of the case, and technical words should give way to such intention").

14

The question before the Court, then, is whether the parties' covenant to waive their insurers' respective rights of subrogation against each party was dependent on defendant's compliance with its covenant not to make any structural alterations or installations without first receiving Mr. Lax's prior written permission to do so. See F.H.R. Auto Sales, Inc., 534 N.Y.S.2d at 267 (holding that the determination whether two covenants in a lease are dependent "is determined by the intention of the parties as expressed in the lease"). There is nothing in the Lease that suggests that defendant's obligation to obtain Mr. Lax's prior written permission before altering the premises was a condition precedent to the enforcement of Mr. Lax's covenant to waive any rights of subrogation its insurer would have against defendant.

First, the Lease does not contain any express statement conditioning the enforcement of the waiver-of-subrogation clause on defendant's performance of any other covenant (and plaintiff does not argue otherwise). See, e.g., 56-70 58th St. Holding Corp., 159 N.E.2d at 154-55 ("Here, as in the Rosenthal case, 'the intention of the parties is not obscure.' . . . [T]he lease fail[ed] to expressly condition the continued payment of rent upon the landlord's procurement of a suitable certificate . . . ." (quoting Rosenthal Paper Co. v. Nat'l Folding Box & Paper Co., 123 N.E. 766, 768 (N.Y. 1919))); F.H.R. Auto Sales, Inc., 534 N.Y.S.2d at 267 ("It is undisputed that the giving of consent was not expressly condition upon plaintiff's performance of repairs . . . .").

Second, a review of the Lease's terms as a whole, and the general construction of the document, leads the Court to the conclusion that the parties did not intend to condition the enforcement of the broadly phrased waiver-of-subrogation clause on defendant's covenant to obtain Mr. Lax's prior written permission before altering the premises. This case is, therefore, unlike those cases in which courts have found that certain covenants in a lease are dependent on each other. For example, in Liberty Mutual Insurance Co. v. Perfect Knowledge, Inc., 752

N.Y.S.2d 677, 678-79 (App. Div. 2002), a case relied upon heavily by plaintiff (Pl.'s Mem. Law Opp'n Mot. 5), the Second Department declined to enforce a waiver-of-subrogation provision where the tenant-defendant had breached its lease by failing to procure liability coverage pursuant to the lease's terms. The court found that, given a waiver-of-subrogation provision is "part and parcel of a risk allocation agreement" under which the parties shift any prospective liability to their respective insurers, a party's failure to procure the necessary insurance frustrates entirely the nature of the scheme: "Without the procurement of insurance, the shifting envisioned under the agreement could not take place, and the agreement was frustrated." Id. In other words, plaintiff's covenant to waive its insurer's subrogation rights against defendant was dependent on its being able to recover damages from its insurer in the first place. Defendant's failure to procure the appropriate amount of insurance frustrated this arrangement entirely. See also Broad Props., Inc. v. Wheels Inc., 351 N.Y.S.2d 15, 20 (App. Div. 1974) (finding defendant-tenant's obligation to pay as additional rent its proportion of any increase in tax levies on plaintiff-landlord's property dependent upon landlord's covenant to first properly have tenant's portion of the property properly assessed). There is no such connection between the subject covenants in this case, however.

In sum, plaintiff's claims for negligence, gross negligence, and breach of contract are barred, as a matter of law, by the waiver-of-subrogation clause in the Lease and the insurance agreements between Mr. Lax, defendant, and their respective insurers. While the Court recognizes that some courts have found certain waiver-of-subrogation clauses to only preclude subrogation actions for negligence, but not breach of contract,[11] the Court believes that the

---

[11] In Viacom International, Inc. v. Midtown Realty Co., the First Department, adopting the analysis of a prior case from this court, see St. Paul Fire & Marine Ins. Co. v. Protection Mut. Ins. Co., 644 F. Supp. 38, 40 (S.D.N.Y. 1986), held that the following waiver-of-subrogation provision only barred tort, but not breach of contract, claims:

16

subject clause does not so differentiate. First, the plain meaning of the terms of the clause, which bars claims for "any damage or loss occasioned by hazards compensated by insurance," distinguishes it from those cases in which only tort actions were found to be barred. Second, this finding accords with the Second Circuit's interpretation of a similarly worded provision in St. Paul Fire & Marine Insurance Co. v. Universal Builders Supply, 409 F.3d 73 (2d Cir. 2005) (Kearse, J.).[12] In that case, the Second Circuit found that the waiver-of-subrogation clause in question barred plaintiff's claims grounded in negligence, gross negligence, *and* breach of contract; and did not address at all the New York state court and district court opinions that have differentiated between contract and tort claims.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED. The Court Clerk is ordered to close the case file.

**SO ORDERED.**
**New York, New York**

May  4 , 2006

                                                  _____
                                                  U.S.D.J.

---

> Nothing contained hereinabove shall relieve [Viacom] from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, [Viacom and Midtown] each hereby releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation or otherwise.

602 N.Y.S.2d 326, 328 (App. Div. 1993). Both the Viacom and Protection decisions have been followed for this proposition. See, e.g., Gap, Inc. v. Red Apple Cos., 725 N.Y.S.2d 312, 317 (App. Div. 2001).

[12] Compare the terms of the waiver-of-subrogation provision in St. Paul, 409 F.3d at 77, the "'[o]wner . . . waive[s] all rights' against contractors and subcontractors 'for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to' the builder's risk policy," with the terms of the instant provision, "[l]andlord and Tenant respectively hereby waive the right to recover from each other any damage or loss occasioned by hazards compensated by insurance" (Lease art. 46).

17

Copies of this Opinion and Order have been mailed to:

Mark L. Antin, Esq.
Gennet, Kallmann, Antin & Robinson, P.C.
45 Broadway Atrium
c/o Litman Suite
New York, New York 10006

Michael Frank Bastone, Esq.
Scott Lawrence Haworth, Esq.
Sedgwick, Detert, Moran & Arnold, LLP
125 Broad Street
39th Floor
New York, New York 10004